Herbert Payne and Helen Payne v. Commissioner.
Payne v. Commissioner
Docket No. 4035-62.
United States Tax Court
T.C. Memo 1964-119; 1964 Tax Ct. Memo LEXIS 215; 23 T.C.M. (CCH) 670; T.C.M. (RIA) 64119; April 30, 1964
*215 Herbert Payne, pro se, 1381 Gardiner Drive, Bay Shore, N. Y. John B. Murray, Jr., and William T. Holloran, for respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined a deficiency in petitioners' income tax for the year 1960 and an addition to tax under section 6653(a), 1954 Code, in the amounts of $651.99 and $32.60, respectively. The issues for decision are: (1) Whether petitioner, a hairdresser, received during 1960 additional unreported income from tips; and (2) Whether petitioner is liable to an addition to tax for negligent failure to keep adequate books or records. Findings of Fact Some of the facts are stipulated and are hereby found as stipulated. The petitioners Herbert Payne and Helen Payne are husband and wife, who reside at 1381 Gardiner Drive, Bay Shore, New York. (Herbert is hereinafter referred to as "petitioner".) They have three minor children, two of whom were born prior to the close of the taxable year 1960, and a third child was born to the petitioners in April of 1963. Petitioners filed a timely joint Federal income tax return for the calendar year ended December 31, 1960, with the district *216 director for the Brooklyn District of New York. They used the cash basis method of accounting and reporting for income tax purposes. The petitioner was employed in 1960 and is presently employed as an operator at R. H. Macy's Studio, a beauty salon located at Roosevelt Field, Nassau County, Long Island, New York. He received a salary of $82 per week as an operator in the studio during 1960 and received as sales commissions 25 percent of that portion of his gross sales which was in excess of twice the amount of his salary. Petitioner correctly reported as salary and commissions received from R. H. Macy's $5,793.47 for 1960. The recorded customer sales of the petitioner, which he earned on behalf of Macy's during 1960, aggregated $13,465. Petitioner reported as tips for the year 1960 the amount of $269, which represented approximately 2 percent of the gross sales earned by him as an operator in the Macy's beauty salon. During the year, he kept in a notebook entitled "Weekly Time Book" a daily record of the amount (approximate) which petitioner took in and the total tips received. He usually made these entries in the evening. The amount of tips reported on his return agreed with this *217 notebook record. As a result of a pre-refund audit of the joint income tax return of the petitioner and his wife the petitioner appeared on several occasions before a tax examiner in the district director's office. Neither the examiner nor her immediate supervisor saw petitioner's daily record of tips at the time of examination. R. H. Macy's beauty salon is separated into two parts, one part, known as the "Studio", where a customer receives regular hair styling, and the "Little Shop", where a customer receives individual hair styling. Petitioner worked for five days a week, Monday through Saturday, except Wednesday, which was his day off, in the "Studio" portion of the beauty salon during the calendar year 1960. He worked a total of 245 days during the calendar year 1960. The customers who patronize the beauty salon are classified in two categories and they are known as "transient customers" and "regular customers". The "transient customers" are those who make appointments to have their hair done but they do not make a specific request that a particular operator do their hair. The "regular customers" are those who make an appointment for their hair to be done and they specifically *218 request that a particular operator do their hair. Macy's list price for specific hair services for the calendar year 1960 were as follows: STUDIO
LITTLE SHOP
Permanent Waves
$ 7.94-$50.00
$12.50-$50.00
First bleach of hair
25.00- 35.00
25.00- 35.00
Regular touch-up bleach of hair
10.00
10.00
Hair set, if any
2.00
3.00
Regular touch-up tint of hair
5.50
5.50
Hair set, if any
2.00
3.00
Frosting of hair
15.00- 25.00
15.00- 25.00
Shampoo of hair and set
2.50
3.50
Hair cut
2.00
3.00
Petitioner has received up to a dollar as a tip for a five dollar hair style job. The number of women customers who patronized the Studio at Macy's beauty salon during the calendar year 1960 and specifically requested the services of the petitioner numbered 1,662. In addition, he served 638 other customers. The sole source of petitioners' known income during the taxable year 1960 came from petitioner Herbert Payne's salary and commissions paid to him by his employer during the taxable year 1960; income from tips, cash on hand in the bank accounts of the petitioner and his wife; and a state tax refund of $90.43. Petitioners made total deposits during *219 1960 of $987.64 in their three savings bank accounts at the: Suffolk County Federal Savings; Sayville Federal Savings & Loan Association; and the Bayshore Federal Savings and Loan Association, while making two withdrawals totalling $839. Petitioners jointly maintained a regular checking account with the Security National Bank in Bayshore, New York, which contained an opening balance of $759.72 on January 13, 1960, and a closing balance of $16.73 on December 29, 1960. On November 14, 1960, petitioners opened a stock brokerage account with Edwards & Hanly, members of the New York Stock Exchange, Hempstead, New York. Petitioners purchased from Edwards & Hanly shares of P. R. Mallory stock for the sum of $414.69 during the taxable year 1960. On their return for 1960, petitioners reported support of Herbert's mother, Mrs. Clair Payne, in the amount of $1,060 during the year. Petitioner owned jointly with his mother property at 23 Fifth Avenue, Bayshore, New York. He paid during 1960 the sum of $320.50 for real estate taxes imposed on his own residential property. Petitioners owned two automobiles during the taxable year 1960, one of which was a 1959 Renault. Petitioners estimated *220 that their cost of living expenses during the calendar year 1960 were $5,838.50. Opinion Respondent has increased the amount of tips reported by petitioner by $2,239, the petitioner having reported $269 of tip income on his return. Thus, respondent has determined that petitioner received a total of $2,508 from this source in 1960. Since petitioner's gross sales of his services were $13,465 in that year, respondent has determined that his tips averaged about 20 percent of his receipts, as compared to the approximately 2 percent reported by petitioner. There is no evidence of record as to how respondent arrived at the basis for his tip computation. There is no explanation of why a 20 percent factor was used rather than some other ratio. There is no evidence of business usage or practice, if any. There is no evidence of the tip receipts of other beauticians except for the testimony of petitioner's own witness, Brancaleone, which corroborated petitioner's testimony. Respondent insists that we not accept petitioner's daily record of tips as evidence. However, the record in question has every appearance of being exactly what petitioner claims it to be, namely, a daily record kept *221 in 1960. It is true that respondent's examining agent and her supervisor both testified at the trial that, at the time of their examination, they had asked petitioner if he had any record of tips, and he failed to produce any. On the other hand, petitioner testified that he had proffered the book to the examining agent but that: "She said it wasn't important." Respondent would have us conclude from this apparent contradiction in evidence that petitioner's testimony that he kept the record cannot be believed. We have not so concluded. Respondent cites other aspects of petitioner's testimony at the trial or statements at the time of examination as indicating that his credibility as a witness is questionable. Without reviewing each of these instances here, suffice it to say that we do not agree. His recollection was plainly not strong. However, to mention one example, failure to be able to name the make of a second car owned in 1960 does not strike us as necessarily indicative of lack of veracity. The respondent rests heavily upon a purported substantial excess of petitioners' living expenses over known income as supporting his determination of tip income. Using an estimate of 1960 *222 living expenses prepared by petitioners, and adding certain other expenditures of record, respondent would have us find total expenses of $7,821.83, as follows: Petitioners' estimate
$5,838.50
Support payments to mother shown
on return
1,060.00
Stock purchase
414.69
Excess of savings account deposits
over withdrawals
508.64
Total
$7,821.83 [1]
Against that total, respondent would have us find reported available income during 1960 as follows: Salary and commissions
$5,793.47
Reported tips
269.00
State tax refund
90.43
Net checking account withdrawals
742.99
Total
$6,895.89
From the above totals, respondent would have us find an excess of expenses over reported income of $925.94. The estimate of expenses prepared by petitioners was introduced by respondent without any *223 explanation of items by the petitioner. With respect to the $1,060 in support payments for the mother shown on petitioners' return, they also included $150 for the support of a dependent "Outside of Household" on their estimate of expenses. We have reduced the $1,060 by this amount to $910 to prevent duplication. Actually, respondent disallowed petitioners' claim of the mother as a dependent, an adjustment conceded by petitioners. We do not know the basis for the disallowance and particularly whether it involved the amount of support actually provided. Petitioner's testimony at the trial suggests the possibility that he had included the rental value of his share of his mother's house as part of his support. In any event, while we include $910 as a cash expense item, we consider it of doubtful accuracy. The amount added for stock purchase is correct. However, respondent's computation of transactions in the three savings accounts are incorrect. Using respondent's own exhibits, we find deposits totalling $987.64 instead of $847.64. More serious, respondent ignored a single withdrawal of $500. With these adjustments, the excess of deposits over withdrawals was $148.64 instead of $508.64. *224 Respondent's computation of known income appears correct. Therefore, with the above adjustments in the expense computations, we find an apparent excess of expenses over reported income of $415.25. Respondent has determined additional tip income of $2,239, a ten-fold increase. We do not believe it can be sustained. As we have pointed out above, respondent has offered no explanation whatsoever of how he arrived at his computation. Insofar as is disclosed by this record, the 20 percent tipping rate simply was pulled out of the air. On the record before us, we hold the respondent's determination of tip income to be arbitrary and unreasonable. Suspicious we may well be of the 2 percent rate reported by petitioner but suspicion cannot take the place of evidence. Such direct evidence as there is supports the petitioners. We hold that they did not understate tip income. In view of our decision, the addition to tax for failure to keep adequate records is likewise not sustained. Decision will be entered under Rule 50. Footnotes
1. On brief, respondent states that $320.50 should also be added for real estate tax paid by petitioner on the house owned jointly with his mother. However, this amount is included in the list of estimated expenses prepared by petitioners. In any event, the total of expenses asserted by respondent, $7,821.83, does not contain a duplication of these amounts.↩